## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROCHELLE FOXWORTH,**<br><br>Plaintiff,<br><br>v.<br><br>**DENIS MCDONOUGH**,<br><br>Defendant. | Case No. 1:23-cv-02195 (TNM) |

## MEMORANDUM ORDER

Plaintiff Rochelle Foxworth, a Supervisory Program Specialist at the Department of Veterans Affairs, alleges that her supervisor discriminated against her based on her sex when he admonished her for not following leave procedures, further discriminated and retaliated against her by giving her mediocre performance ratings, and created a hostile work environment with his negative attitude toward women.  Based on this alleged misconduct, Foxworth brings Title VII discrimination and retaliation claims against VA Secretary Denis McDonough.  The Secretary moves to dismiss or in the alternative for summary judgment.  On the motion to dismiss, the Court concludes that Foxworth fails to state a hostile work environment claim.  So it grants the Secretary's motion to dismiss in part.  But Foxworth is entitled to discovery on whether the Department's reasons for her admonishment and performance ratings were pretextual.  The Court therefore denies summary judgment for now.

### I.

Foxworth has worked for the VA in various capacities since 2010.  Compl. ¶ 12, ECF No. 1.  In December 2019, she started her current role as a Supervisory Program Specialist

within the Veteran Benefit Administration's Office of Administration and Facilities. *Id*. ¶ 15. Her supervisor in that position was Eugene Martin, the Assistant Director of Administration for the Office of Mission Support. *Id*. ¶ 16.

Foxworth asserts that Martin showed favoritism toward male employees but was dismissive and combative toward women. *Id*. ¶¶ 21, 63. From the start, Martin allegedly gave her "little to no guidance." *Id*. ¶ 18. At points, he subverted her authority by "giv[ing] her subordinates assignments without her knowledge or approval." *Id*. And when Foxworth or her female colleague spoke at team meetings, Martin would "interrupt[] them" and "angrily tell[] them to 'stand down.'" *Id*. ¶ 20. Meanwhile, Martin gave Foxworth's male colleagues more supervisory responsibilities and one-on-one guidance. *Id*. ¶ 21.

On March 23, 2021, Foxworth emailed her colleague, Angela Davis, to tell her that she would not be at work until 10 a.m., three hours after her "tour of duty" was scheduled to begin. *Id*. ¶ 24. Foxworth asked Davis to inform Martin that she was sick and would be late. *Id*. Soon after, Davis emailed Martin relaying the message. *Id*. ¶ 25. Foxworth ultimately started work slightly before 10 a.m. and worked past her 4:30 p.m. end time. *Id*. ¶ 26. She also worked another hour and a half that week to compensate for missed time. *Id*. ¶ 27.

Several days later, Martin emailed Foxworth asking her to submit a leave request for her absence on March 23. *Id*. ¶ 28. Foxworth did not respond to this email. *Id*. ¶ 29. She believed that she did not need to submit a leave request so long as she compensated for any missed time throughout the week. *Id*. The next day, however, Martin re-sent the email. *Id*. ¶ 30. This time, Foxworth responded immediately. *Id*. ¶ 31. She noted had worked extra hours but would file a leave request if needed. *Id*.

In response, Martin insisted she submit the request "immediately."  Def.'s Ex. A at 3, ECF No. 10-2 pp. 1–7.  He also reminded her that, as her supervisor, he was the "approval authority for leave requests and changes to [her] tour of duty."  *Id*.  And under the "Office Decorum" memorandum, employees must submit leave requests by email or telephone directly to their supervisors in advance.  *Id*.

Days later, Martin issued Foxworth a Letter of Admonishment (LOA) for "failing to follow proper leave procedures on March 23."  Compl. ¶ 34.  The LOA cited Foxworth with failing to "report for duty as scheduled and fail[ing] to obtain permission from [her] supervisor for [her] absence as required."  Def.'s Ex. B at 1, ECF No. 10-2 pp. 8–10.  The LOA stated that these actions violated the VA Handbook 5011 and the Office Decorum memo, which required employees to submit all "deviation[s] from their tour of duty" to their supervisor for approval. *Id*.

Upon receiving the LOA, Foxworth spoke with Kevin Brown at the VA Human Resources Department.  Compl. ¶ 37.  She conceded her tardiness on March 23 but claimed she "made up the hours."  *Id*.  Brown, who had helped Martin draft the LOA, said he would raise the issue with Martin.  *Id*.; Decl. of Rochelle Foxworth (Foxworth Decl.) ¶ 11, ECF No. 12-4.  The next day, Martin reissued the LOA with one minor alteration.  Rather than stating that Foxworth "did not report for duty as scheduled," it stated that she failed to "report for duty" period. Compl. ¶ 38.  Three days later, Foxworth filed an informal EEO complaint alleging sex discrimination.  *Id*. ¶ 39.

In May 2021, Martin issued Foxworth's mid-year performance appraisal.  *Id*. ¶ 40; Def.'s Ex. C, ECF No. 10-2 pp. 11–21.  The mid-year appraisal had only two rating options:  "Fully Successful" and "Needs Improvement."  *Id*. at 4.  Martin rated Foxworth as "Needs

Improvement." *Id.*  In support of this rating, Martin noted that Foxworth needed to "focus on communication with the Assistant Director," "[i]mprove in the areas of reviewing . . . briefings materials," and "[t]ake a more active role as the alternate supervisor in the FOIA Automation Project." *Id.* at 5.

Foxworth was "shocked" by the "Needs Improvement" rating on her appraisal.  Compl. ¶ 42.  Upon receiving it, she asked Martin to justify his rating.  *Id.*  He mentioned that Foxworth "did not lead by example, [and] was not honest with her supervisees." *Id.* ¶ 43.  He also noted that at one point, she "threw [him] 'under the bus.'"  *Id.*  Foxworth contested these reasons, but Martin "ignored her" and ended the meeting.  *Id.* ¶ 44.

In the following weeks, Foxworth reviewed her mid-year performance appraisal with Davis.  She discovered that her appraisal was "basically identical." *Id.* ¶ 47.  Foxworth ultimately refused to sign her appraisal because "she felt that it was not based on actual facts about her performance."  *Id.* ¶ 48.  She alleges that Martin was aware of her pending EEO complaint when he completed the appraisal.  *Id.* ¶ 41.

Martin issued Foxworth's end-of-year performance appraisal in early November.  *Id.* ¶ 49.  It consisted of six elements.  Def.'s Ex. J at 5, ECF No. 10-2 pp. 46–55.  Foxworth received "Fully Successful" ratings for two elements.  *Id.*  And for the remaining categories, Foxworth received "Exceptional" ratings.  *Id.*  As required, Martin provided examples of performance justifying her "Exceptional" ratings.  *Id.*  But Martin was not required to justify the "Fully Successful" ratings, and he did not do so.  *Id.*  Because Foxworth was ranked "Fully Successful" on two "critical" elements, her overall rating was "Fully Successful," instead of "Excellent" or "Outstanding."  *Id.* at 6; Compl. ¶ 50.  The lower rating precluded Foxworth from

receiving an end-of-year cash award and seeking training and promotional opportunities. Compl. ¶ 51.

In July 2021, Foxworth filed a formal EEO complaint against Martin raising a single hostile work environment claim based on the LOA. Def.'s Ex. D at 1, ECF No. 10-2 pp. 24–27; Def.'s Ex. F at 2, ECF No. 10-2 pp. 32–33. The following September, the VA Office of Resolution Management issued a Notice of Acceptance regarding Foxworth's complaint. Def.'s Ex. D at 1. The Notice of Acceptance dismissed Foxworth's hostile work environment claim because the single LOA did not constitute "severe or pervasive" conduct. *Id*. at 2. Even so, the agency accepted Foxworth's LOA claim as an "independently actionable claim of disparate treatment." *Id*. In December 2021, Foxworth amended her complaint to include disparate treatment based on her end-of-year appraisal. Def.'s Ex. E, ECF No. 10-2 pp. 28–31.

In April 2023, the EEOC entered summary judgment for the agency. Compl. ¶ 9. The next month, the agency entered its Final Order implementing the EEOC's decision. *Id*. Foxworth then sued here.

## II.

The Secretary moves to dismiss or in the alternative for summary judgment. So two standards apply.

A defendant may move to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, the complaint must allege facts—which, taken as true—state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In determining whether a complaint fails to state a claim, [a court] may consider only the

facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Courts will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To establish a fact is not in dispute, a party may rely on "materials in the record, including depositions, documents . . . affidavits or declarations."  *Id*. at 56(c)(1)(A).  A fact is "material" for purposes of summary judgment if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hayes v. District of Columbia*, 923 F. Supp. 2d 44, 48 (D.D.C. 2013).  Once the movant carries its burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

### III.

Foxworth's Complaint pleads two counts of discrimination and hostile work environment—one based on sex and the other on retaliation.  Compl. ¶¶ 54–77.  The Secretary moves to dismiss Foxworth's hostile work environment claim as unexhausted, or in the alternative, for failure to state a claim.  Def.'s Mot. to Dismiss (MTD) at 5–8, ECF No. 10.  On the discrimination and retaliation claims, the Secretary moves for summary judgment.  He contends that he has provided legitimate reasons for Foxworth's LOA and performance ratings, and that Foxworth cannot show pretext.  MTD at 10–18.

**A.**

Consider first Foxworth's hostile work environment claim.  Foxworth alleges that Martin created a hostile work environment with his negative attitude toward women.  Specifically, she alleges that Martin undermined her authority by assigning tasks to her subordinates without her knowledge, prevented her from speaking in meetings, and demeaned her in front of her colleagues.  *See* Compl. ¶ 63.  Foxworth also alleges that Martin treated her with hostility in two discrete instances.  First, when he admonished her for failing to follow leave procedures.  And second, when he gave her "Needs Improvement" and "Fully Satisfactory" ratings on her mid-year and end-of-year performance appraisals.  *Id.* ¶ 58–59.  The Court finds that Foxworth has exhausted some but not all the discriminatory acts supporting her hostile work environment claim.  But even so, the Court concludes that the claim fails on the merits.

**i.**

Start with exhaustion.  Before bringing claims in federal court, a Title VII complainant must exhaust her administrative remedies.  *See* 42 U.S.C. § 2000e-5(f)(1); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).  To do so, the employee must try to resolve the matter with an EEO Counselor.  29 C.F.R. § 1614.105.  If counseling is unsuccessful, the employee must file a complaint with the agency that "describe[s] generally the action(s) or practice(s) that form the basis of the complaint."  *Id.* § 1614.106(c).  Before investigating the complaint, the agency may dismiss all or part of the complaint for failure to state a claim.  *Id.* § 1614.107(a)(1).  It must then "notify the complainant in writing of its determination" and its "rationale."  *Id.* § 1614.107(b).  The agency then investigates the remaining claims.  And "if the employee so requests, [the agency] refers the matter to an EEOC administrative judge for a hearing."  *Payne*, 619 F.3d at 58 (citing 29 C.F.R. § 1614.106(e)(2)).  An employee who disagrees with the agency's final

resolution may "either appeal to the EEOC or file suit in federal court." *Id.* (citing 29 C.F.R. § 1614.110).

Lawsuits arising from this process are limited to the claims alleged in the EEO complaint or claims that "reasonably relate[] to" and "grow[] out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Any claims that do not "reasonably relate" to those in the complaint are unexhausted. *See id.* Failure to exhaust administrative remedies under Title VII is an affirmative defense that the defendant must plead and prove. *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 63 (D.D.C. 2015).

This case presents two distinct exhaustion issues. First, whether Foxworth exhausted her allegations that Martin undermined her authority and treated her with hostility. And second, whether Foxworth exhausted her overall hostile work environment claim after the agency dismissed it in its Notice of Acceptance.

The first issue is straightforward because Foxworth's EEO complaint did not address Martin's demeanor and management style. Courts have long held that "[f]iling a formal complaint is a prerequisite to exhaustion." *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012). "[T]he scope of the administrative complaint determines the scope of exhaustion and, hence, the claims that the employee may eventually pursue in federal court." *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 47 (D.D.C. 2022). Thus, a plaintiff "cannot rely on the EEO counseling report to establish exhaustion of a claim that [s]he failed to include in h[er] formal complaint." *Hamilton*, 666 F.3d at 1350.

Foxworth's initial complaint alleged that Martin created a hostile work environment based only on the LOA. *See* Def.'s Ex. D at 1; Def's Ex. F at 1. And her amended complaint alleged sex discrimination and retaliation based on her end-of-year performance rating. Def.'s

Ex. E at 1.  In her pre-complaint EEO counseling, Foxworth raised her supervisor's hostile conduct toward women.  *See* Opp'n at 18.  But her complaint is silent on these matters. Foxworth's EEO complaint thus did not provide the Secretary "with notice to investigate [these] possible grounds of discrimination."  *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008). So any hostile work environment claim based on them is unexhausted.

Still, Foxworth argues that the Court should treat these allegations of hostile conduct as exhausted because they are "reasonably related" to the LOA and performance reviews.  Pl.'s Opp'n to Def.'s MTD (Opp'n) at 14, ECF No. 12.  Admittedly, the exact contours of "reasonably related" remain "uncertain[]."  *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014).

Recall that in *Park*, the D.C. Circuit held that a plaintiff administratively exhausts allegations included the EEO complaint or that "reasonably relate[] to" and "grow[] out of such allegations."  71 F.3d at 907.  But in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court undermined *Park*'s rationale when it held that claims brought outside the limitations period were time barred even if they were "reasonably related" to timely claims.  *See Payne*, 619 F.3d at 65.  The Circuit has not resolved whether *Morgan*'s rationale regarding untimely claims applies to unexhausted claims that are "reasonably related" to exhausted ones.  *Id.*; *see also Webster v. Del Toro*, 49 F.4th 562, 568 (D.C. Cir. 2022) (noting that the Circuit has "twice reserved the question whether *Park* survives *Morgan*").  And courts in this district still diverge in their approaches to the "reasonably related" exception.  *See Nguyen v. Mabus*, 895 F. Supp. 2d 158, 183 (D.D.C. 2012) (collecting cases); *Rashad v. WMATA*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (same).

It is unnecessary to address this split here.  This is because Foxworth's "related" unexhausted allegations are based on conduct that occurred *before* she filed her EEO complaint.

*See* Compl. ¶¶ 19–22.  Courts in this district have disagreed on whether a plaintiff must separately exhaust "claims based on events that occur *after* the filing of an administrative charge."  *Mount*, 36 F. Supp. 3d at 85 (emphasis added).  But Foxworth cites no case finding that a plaintiff exhausted allegations based on "reasonably related" conduct *preceding* the EEO complaint.

The omission is unsurprising since there is good reason to disfavor such retroactive exhaustion.  If courts treated "reasonably related" pre-EEO complaint conduct as exhausted, plaintiffs could wait until their federal lawsuit to raise allegations that should have been included in their administrative charge.  Allowing plaintiffs to circumvent the exhaustion requirement in this way would undermine the agency's ability to investigate and administratively resolve discrimination claims.  *See Park*, 71 F.3d at 907 ("A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process.").  So the Court concludes that Foxworth was required to exhaust her pre-EEO complaint allegations, even if they are somehow "related" to the events she ultimately elected to raise before the agency.  *See Webster*, 49 F.4th at 567 ("[A] 'charge' alleging one 'unlawful employment practice' does not permit the employee to challenge others.").  To the extent that Foxworth alleges conduct post-dating her EEO complaint, she has not shown how that conduct was "reasonably related" to the LOA or performance ratings.

The second issue—the one pertaining to Foxworth's LOA and performance ratings—is more complicated.  As explained, a plaintiff exhausts a claim when she includes it in her formal EEO complaint.  *See Park*, 71 F.3d at 907.  The complaint gives the agency "notice of the claim" thereby "narrow[ing] the issues for prompt adjudication and decision."  *Id*. (cleaned up).

But some courts have carved out an exception to this principle. "[W]here an agency reasonably fails to identify for investigation a claim *indirectly* asserted in a plaintiff's administrative charge, and where the plaintiff does not timely object to this omission before the agency, the plaintiff cannot show that he has exhausted administrative remedies as to this claim." *Dick v. Holder*, 80 F. Supp. 3d 103, 114 (D.D.C. 2015) (emphasis added); *see also Bozgoz v. James,* No. 19-cv-0239, 2020 WL 4732085, at *7 (D.D.C. Aug. 14, 2020) ("In cases where the plaintiff did not object, courts have found that . . . only the events in the Notice of Acceptance letter were administratively exhausted."); *Green v. Small*, No. 05-cv-1055, 2006 WL 148740, at *6 (D.D.C. Jan. 19, 2006) (treating claim as unexhausted when plaintiff failed to respond to agency's framing of claims in letter of acceptance). That said, this rule applies only when the complaint is ambiguous or unclear. When there is "conflict between the acceptance letter and . . . EEO complaint documents . . . the complaint takes precedence." *Coleman v. Duke*, 867 F.3d 204, 213 (D.C. Cir. 2017).

The Secretary argues that this rule applies here. He contends that, although Foxworth raised a hostile work environment claim in her EEO complaint, she did not object object when the agency recharacterized it as a disparate treatment claim in its Notice of Acceptance.

But the Secretary glosses over important differences between this case and those applying the exhaustion rule. Most significantly, this is not a case in which an agency, faced with a litany of allegations and inchoate claims, "reasonably fail[ed] to identify . . . a claim" that a plaintiff may have "indirectly asserted." *Dick*, 80 F. Supp. 3d at 114–15. In those cases, it is "incumbent" on the plaintiff to "clarify his imprecise allegations if he believe[s] that the [agency] had misinterpreted them." *Id*. at 116. And if the plaintiff does not object, a court may find claims omitted from the Notice of Acceptance abandoned and unexhausted. *See id*. at 119;

11

*McKeithan v. Boarman*, 803 F. Supp. 2d 63, 67 (D.D.C. 2011) (finding retaliation claim unexhausted where plaintiff did not argue that the "administrative complaint could be interpreted to raise a retaliation claim" and did not object to agency's omission of retaliation claim from its notice of acceptance).  Requiring plaintiffs to object at this stage furthers the purposes of exhaustion.  It puts the agency on "on notice of what allegedly occurred." *Bain*, 648 F. Supp. 3d at 47.  And it ensures the agency "understands its potential legal exposure, and is aware of what records it needs to create and to preserve in anticipation of judicial review." *Id*.

But in this case, Foxworth was not "imprecise" or "indirect" in raising her hostile work environment claim.  To the contrary, she explicitly raised a hostile work environment claim in her July 2021 complaint.  Def.'s Ex. F at 1.  Nor is this a case in which the agency inadvertently omitted a claim that the plaintiff indirectly raised.  Rather, the agency expressly acknowledged Foxworth's hostile work environment claim but dismissed it because she did not allege severe or pervasive conduct.  Def.'s Ex. D at 2.  The agency then accepted her claim "as an independently actionable claim of disparate treatment." *Id*.

Foxworth does not dispute that she never formally objected to the reframing of her hostile work environment claim, even though the Notice of Acceptance warned her that she must notify the agency if she "believe[d] that the accepted claim is improperly formulated." *Id*.  But the Notice of Acceptance also stated that "[t]here is no immediate right to appeal the dismissed portions of the complaint." *Id*.  And Foxworth may have reasonably relied on this statement to conclude that she had exhausted her administrative remedies for the dismissed claim.  Indeed she had.

The Court therefore holds that because Foxworth expressly raised her hostile work environment claim in her formal EEO complaint, and the agency expressly dismissed that claim

in its Notice of Acceptance, Foxworth exhausted her administrative remedies for that claim, even though she did not object to the agency's dismissal and reformulation. *Accord Mokhtar*, 83 F. Supp. 3d at 67 (finding claim omitted from acceptance letter administratively exhausted because it "was written plainly and directly on the face of the formal EEO complaint"). This put the agency on notice and satisfies the exhaustion requirement. *See Coleman*, 867 F.3d at 212 (finding that plaintiff exhausted alleged act of reprisal omitted from the agency's letter of acceptance because reprisal claim was "expressly included" in his formal complaint). To conclude otherwise would turn exhaustion into a highly "technical" exercise for "individuals untrained in negotiating procedural labyrinths." *Park*, 71 F.3d at 907.

## ii.

The Secretary argues that, in the alternative, the Court should dismiss Foxworth's hostile work environment claim on the merits. The Court agrees.

To prevail, Foxworth must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (cleaned up). Courts evaluate these factors under "the totality of the circumstances." *Id*. This includes "the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id*. "The standard is an objective one." *Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C. Cir. 2015). It also presents a high bar. Title VII is not meant to be a general civility code. *Arnoldi v. Bd. of Trustees, Nat'l Gallery of Art,* 557 F. Supp. 3d 105, 120 (D.D.C. 2021), *aff'd,* 2022 WL 625721 (D.C. Cir. Mar. 1, 2022).

Considering all Foxworth's allegations—including the unexhausted acts of discrimination—the Court concludes that she has not shown that Martin's conduct was so severe or pervasive that it altered the conditions of her employment or created an abusive working environment.

Foxworth alleges that Martin interrupted her during meetings, did not speak to her unless necessary, told her to "stand down," declined to ask her to act as division head in his absence, gave assignments to her supervisees without consulting her, and prevented her from being nominated for an award. *See* Compl. ¶ 63; Opp'n at 22. Recall that Foxworth did not raise these allegations in her EEO complaint. So they are unexhausted.

In any event, this conduct does not meet "the demanding standards for a hostile work environment claim." *Sewell v. Chao*, 532 F. Supp. 2d 126, 141–42 (D.D.C. 2008). Martin's interruptions and abrasive language fall within the range of "petty insults, vindictive behavior, and angry recriminations that are not actionable under Title VII." *Brooks v. Grundmann*, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014) (cleaned up). Indeed, courts in this district have dismissed hostile work environment claims based on far worse. *See Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54–55 (D.D.C. 2004) (finding plaintiff's allegations that employer screamed at her, humiliated her in meetings, and was "constantly hostile and hypercritical" did not create hostile work environment); *Hunter v. D.C. Child & Fam. Servs. Agency*, 710 F. Supp. 152, 159 (D.D.C. 2010) (dismissing hostile work environment claim based in part on allegations of "unprofessional, negative, and malicious behavior and comments from management").

Foxworth's allegations that Martin avoided assigning her responsibilities and circumvented her in delegating tasks also fall short. For one, Foxworth does not allege how

often Martin circumvented her or denied her opportunities to lead.  So there is no allegation that this conduct was pervasive.  But even if Martin routinely ignored the chain of command, this does not rise above the ordinary tribulations of the workplace.  *See Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("exclusion from the informal chain of command" and "missed opportunities for . . . high-profile assignments" not severe enough to establish hostile work environment).  Again, courts in this district have dismissed hostile work environment claims based on far worse.  *See*, *e.g.*, *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("reprimands, denials of travel, disparaging remarks, interference with [plaintiff's] work, multiple failures to promote, and so on" did not establish hostile work environment); *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 347–48 (D.D.C. 2005) (characterizing exclusion from consultations with management and partial loss of job duties as "ordinary tribulations of the workplace").

Now consider Foxworth's exhausted LOA and performance rating claims.  For starters, these discrete acts of discrimination and retaliation do not fit the hostile work environment mold. And courts in this jurisdiction frown on plaintiffs bootstrapping discrete claims of discrimination and retaliation into a broader hostile work environment claim.  *Brett v. Brennan*, 404 F. Supp. 3d 52, 66 (D.D.C. 2019); *Bain*, 648 F. Supp. 3d at 61 (dismissing hostile work environment claim that "constitute[d] little more than an additional label that [plaintiff] has placed on a series of discrete discrimination and retaliation claims").  Allegations that concern tangible employment actions are more appropriately brought as discrete discrimination or retaliation claims.  *See Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 85 (D.D.C. 2013).

In any case, the LOA and performance ratings did not create a hostile work environment. Even assuming the LOA was an unusually harsh response for tardiness, Foxworth does not

allege that it contained abusive language.  Nor does she explain how the letter constituted severe or pervasive harassment that altered the conditions of her employment.  But even if she had, courts have consistently held that routine workplace reprimands—justified or not—do not constitute harassment or abuse.  *Nurriddin*, 674 F. Supp. 2d at 93–94 (plaintiff's allegations that his supervisors "unfairly reprimanded and criticized him" did not establish hostile work environment); *Baloch*, 550 F.3d at 1201 (letters of counseling and reprimand containing "constructive criticism" did not establish hostile work environment).  Similarly, lowered performance ratings fall within the scope of "work-related actions by supervisors" that courts routinely reject as a basis for hostile work environment claims.  *See Davila v. Mayorkas*, No. 22-cv-357, 2023 WL 2072455, at *9 (D.D.C. Feb. 17, 2023) (collecting cases).

Because Foxworth has failed to allege discriminatory or harassing conduct that was "severe or pervasive," the Court dismisses her hostile work environment claim.

## B.

Next, consider Foxworth's sex discrimination and retaliation claims.[1]  When, as here, the plaintiff relies on "indirect, circumstantial evidence" to prove discrimination or retaliation, the Court applies the three-step *McDonnell Douglas* framework.  *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Foxworth must first "make out a prima facie case of retaliation or discrimination."  *Id*.  If she does so, the Secretary must then "come forward with a legitimate reason for the challenged action."  *Id*.  Last, Foxworth must respond with "sufficient evidence for a reasonable jury to find

---

[1] Because Foxworth's LOA preceded her filing an EEO complaint, it does not support her retaliation claim.

that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against [her] on a prohibited basis." *Id.* (cleaned up).

The Secretary has proffered a legitimate explanation for Foxworth's LOA and performance reviews. So there is no need to address Foxworth's prima facie case. *See Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The Secretary contends that the LOA was justified because Foxworth did not follow the leave request procedures outlined in the April 2020 "Office Decorum" memo. *See* MTD at 12; Def.'s Ex. O at 1–2, ECF 13-3. And both the mid-year and end-of-year appraisals contain all required explanations for Foxworth's "Needs Improvement" and "Fully Successful" ratings. Def.'s Ex. C at 4; Def.'s Ex. J at 5.

For her part, Foxworth argues that these explanations are pretextual. She asserts that the LOA was unwarranted because she followed the VA Handbook and office norms for taking short periods of leave. Opp'n at 26; Def.'s Ex. N, ECF No. 13-2. She further asserts that her performance appraisal included duties for which she was not responsible. Foxworth Decl. ¶ 15. Foxworth argues that these facts alone can establish pretext. But she also asks the Court to defer summary judgment so that she can take further discovery. Opp'n at 28–29.

The Court cannot conclude at this point that Foxworth has established a genuine issue of material fact. Still, Foxworth shows that discovery is warranted. To justify deferring summary judgment to take additional discovery, the non-moving party must generally "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Further, the affidavit or declaration must (1) "outline the particular facts [the nonmovant] intends to discover and describe why those facts are necessary to the litigation," (2) "explain why [the nonmovant] could not produce the facts in opposition to

the motion for summary judgment," and (3) "show the information is in fact discoverable."
*Convertino v. DOJ*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (cleaned up).

Foxworth argues for discovery in her Opposition without submitting an affidavit or
declaration.  But, for Rule 56(d) purposes, an opposition memorandum can serve as "as the
functional equivalent of an affidavit" so long as it "alert[s] the district court of the need for
further discovery."  *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir.
1988); *see also Butler v. Schapiro*, 839 F. Supp. 2d 252, 258 (D.D.C. 2012) ("Even in the
absence of an affidavit, courts may nonetheless postpone summary judgment if additional filings
in the case have served as the functional equivalent of an affidavit[.]" (cleaned up)).  In her
Opposition, Foxworth argues that discovery is necessary to investigate comparators and to probe
her supervisor's motives in issuing the LOA and assessing her performance.  Opp'n at 28–29.
She hopes to obtain "communications between Mr. Martin and other Agency officials regarding
the adverse actions at issue." *Id*. at 29.  She also intends to depose Martin regarding these
actions.  *Id*.  According to Foxworth, this information is not included in the administrative
record.  *Id*.

The Court is mindful that summary judgment is usually "premature unless all parties
have had a full opportunity to conduct discovery." *Convertino*, 684 F.3d at 99 (cleaned up).
Construed generously, Foxworth's Opposition "states with sufficient particularity why additional
discovery is necessary." *Id*.  Though the Opposition does not "identify precisely what evidence
it is hoped will be discovered . . . [t]his lack of precision does not make any less self-evident . . .
the nature of the evidence [Foxworth] seeks." *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045
(D.C. Cir. 2008).  It is self-evident, for example, that deposing her supervisor might provide
evidence of pretext. *See Moore-Davis v. U.S. Dep't of the Navy*, No. 21-cv-3402, 2023 WL

6276637, at *6 (D.D.C. Sept. 26, 2023) (granting Rule 56(d) motion to depose supervisor in employment discrimination case).  With no discovery so far, Foxworth has not had the chance to obtain this information.  And the Court sees no reason why the information Foxworth seeks— internal communications and the deposition—would not be discoverable.  Nor does the Secretary argue that Foxworth's reasons for needing discovery are unfounded.  Foxworth thus satisfies the *Convertino* factors.  Accordingly, the Court denies the Secretary's motion for summary judgment without prejudice.

**IV.**

Upon consideration of Defendant's [10] Motion to Dismiss or in the Alternative for Summary Judgment, the briefing related to this motion, the pleadings, and the relevant law, it is hereby

**ORDERED** that Defendant's Motion to Dismiss or in the Alternative for Summary Judgment is **GRANTED IN PART.**  The Court dismisses Plaintiff's hostile work environment claim.  It is

**FURTHER ORDERED** that, as to Plaintiff's remaining sex discrimination and retaliation claims, Defendant's Motion for Summary Judgment is **DENIED** without prejudice.

**SO ORDERED**.


Dated: January 10, 2024                                      _____
                                                             TREVOR N. McFADDEN, U.S.D.J.